## Matter of Plumbers Local Union No. 1 v New York City Dept. of Bldgs.

2024 NY Slip Op 32840(U)

August 12, 2024

Supreme Court, New York County

Docket Number: Index No. 160502/2022

Judge: John J. Kelley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. JOHN J. KELLEY**        PART            **56M**

*Justice*

-------------------------------------------------------------------------X

In the Matter of

PLUMBERS LOCAL UNION NO. 1, UNITED ASSOCIATION
OF JOURNEYMEN AND APPRENTICES OF THE
PLUMBING AND PIPEFITTING INDUSTRY OF THE
UNITED STATES AND CANADA, and MICHAEL APUZZO

                         Petitioners/Plaintiffs,

                     - v -

THE NEW YORK CITY DEPARTMENT OF BUILDINGS,
and ACTING COMMISSIONER KAZIMIR VILENCHIK, P.E.,

                     Respondents/Defendants.

-------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 160502/2022 |
| MOTION DATE | 07/12/2024 |
| MOTION SEQ. NO. | 001 |

**DECISION, ORDER, AND
JUDGMENT**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 75, 76, 77, 78, 79, 80

were read on this motion to/for        ARTICLE 78 (BODY OR OFFICER)/X-MOTION DISMISS    .

In this hybrid CPLR article 78 proceeding and action for declaratory relief, the

petitioners/plaintiffs (hereinafter the petitioners)---a trade union local and its highest-ranking

officer---seek relief (a) in the nature of mandamus to compel the respondent/defendant New

York City Department of Buildings (DOB) to enforce the gas, plumbing, and welding worker

qualifications of Admin. Code of City of N.Y. (hereinafter Administrative Code or Admin. Code) §

28-423.1 and Fuel Gas Code (hereinafter FGC) §§ 404.21-404.21.1, (b) in the nature of

prohibition preventing the DOB from granting gas work authorization requests that do not

comport with those Administrative Code and FGC provisions, and (c) for judicial review of the

DOB's determinations that already had approved gas work authorization requests for

landowners who employed workers who did not comport with those provisions. They also seek

a judgment declaring that the DOB is obligated, in the future, strictly to comply with those worker

**160502/2022 PLUMBERS LOCAL UNION NO. 1, UNITED ASSOCIATION OF JOURNEYMEN AND**
**APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND**
**CANADA ET AL vs. THE NEW YORK CITY DEPARTMENT OF BUILDINGS ET AL**
**Motion No. 001**

**Page 1 of 12**

1 of 12

[* 1]

qualification provisions of the Administrative Code and FGC in granting authorizations to connect natural gas service to premises, and to deny such authorizations where the workers hired to connect gas service appurtenances do not meet the worker qualification standards set forth therein. The respondents/defendants (hereinafter the respondents) cross-move pursuant to CPLR 7804(f), 3211(a)(3), and 3211(a)(7) to dismiss the petition for the petitioners' lack of capacity, lack of standing, and failure to state a cause of action. In an order dated December 14, 2023, this court granted the petitioners' motion (MOT SEQ 002) for leave to serve supplemental papers in opposition to the respondents' cross motion. The cross motion is granted, the petition/complaint is dismissed, and the proceeding/action is dismissed.

Admin. Code § 28-423.1 provides as follows:

"For the purposes of this article, 'gas work' means work covered by section 101.2 of the New York city fuel gas code, where such work is required by this code to be performed under the direct and continuing supervision of a licensed master plumber, provided that the term 'gas work' shall not include periodic inspections required pursuant to article 318 of chapter 3 of title 28 of the administrative code. It shall be unlawful to perform gas work unless such work is performed by:

"1. A licensed master plumber; or

"2. A person working under the direct and continuing supervision of a licensed master plumber if such person:

"2.1. Holds a full gas work qualification pursuant to this article; or

"2.2. Holds a limited gas work qualification pursuant to this article and is performing such work under the direct supervision of (i) a person who holds a full gas work qualification pursuant to this article or (ii) a licensed master plumber.

"Exception: The provisions of this article shall not apply to gas work performed, serviced and maintained by utility corporations and subject to the jurisdiction of the New York state public service commission."

FGC § 101.2 articulates the same definition of "gas work" as is set forth in the Administrative Code. FGC § 404.21 provides that "[g]as work shall be performed by individuals possessing the qualifications set forth in Article 28-423 of the Administrative Code. Welders must be qualified in accordance with Section 404.21.1." FGC § 404.21.1, in turn, reads as follows:

160502/2022 PLUMBERS LOCAL UNION NO. 1, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA ET AL vs. THE NEW YORK CITY DEPARTMENT OF BUILDINGS ET AL
Motion No. 001

Page 2 of 12

2 of 12

"Welder's qualifications.

"Welders installing gas piping within buildings at any pressure shall comply with the following:

"1. Welders shall be qualified for all pipe sizes, wall thicknesses and all positions in accordance with the ASME Boiler and Pressure Vessel Code, Section IX. Requalification of welders is required on an annual basis and when requested by the commissioner.

"2. Welder qualification testing shall be performed by an approved agency and the inspector witnessing the test shall be an authorized AWS Certified Welding Inspector. Radiographic test specimens shall be evaluated by a radiographic inspector having a minimum radiography qualification of Level II in accordance with the ASNT, Document No. SNT-TC-1A, Supplement A.

"3. Copies of the certified welder qualification reports shall be maintained by both the approved agency and the licensed master plumber employing the welder(s) for at least six years and shall be made available to the department upon request.

"4. The approved agency shall submit certified welder qualification reports to the department upon successful qualification of a welder and when requested by the commissioner.

"5. The licensed master plumber employing the welder(s) shall submit a statement to the department including who welded the gas piping along with a copy(s) of the certified welder qualification report(s) witnessed by a representative of the licensed master plumber, at the time of the first roughing inspection.

"6. Requalification of a welder is required should the welder fail to maintain welder's continuity every six months. The licensed master plumber employing the welder shall maintain a welder continuity log and the log shall be made available to the department upon request."

The petitioners alleged that the DOB has violated these code provisions by approving gas work for buildings in which that work would not be, or was not anticipated to be, performed by persons who met these qualifications. The institutional petitioner is a union, and the individual petitioner is that union's manager. They alleged that the union represented many members who hold gas work qualification cards issued by the DOB, and who are certified to weld gas piping, and that the union trained, tested, and qualified members for gas pipe welding. The petitioners further asserted that union members have lost opportunities for work, and

160502/2022  PLUMBERS LOCAL UNION NO. 1, UNITED ASSOCIATION OF JOURNEYMEN AND
APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND
CANADA ET AL vs. THE NEW YORK CITY DEPARTMENT OF BUILDINGS ET AL
Motion No. 001

Page 3 of 12

therefore income and benefit contributions, to non-members who allegedly were not qualified under those code provisions and who may allegedly charge landowners less money for the work as a result. In addition, the petitioners alleged that its members' safety has been placed at risk because of welding done by allegedly unqualified workers. Moreover, the petitioners asserted that several of the union's members and representatives serve on licensing boards and Building Code committees, and, thus, have an interest in the enforcement of welding qualification laws.

When assessing the adequacy of a pleading in the context of a motion to dismiss under CPLR 3211(a)(7), the court's role is "to determine whether [the] pleadings state a cause of action" (*511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 151-152 [2002]). To determine whether a claim adequately states a cause of action, the court must "liberally construe" it, accept the facts alleged in it as true, accord it "the benefit of every possible favorable inference" (*id.* at 152; *see Romanello v Intesa Sanpaolo, S.p.A.*, 22 NY3d 881 [2013]; *Simkin v Blank*, 19 NY3d 46 [2012]), and determine only whether the facts, as alleged, fit within any cognizable legal theory (*see Taxi Tours, Inc. v Go New York Tours, Inc.*, 41 NY3d 991 993, [2024]; *Hurrell-Harring v State of New York*, 15 NY3d 8 [2010]; *Leon v Martinez*, 84 NY2d 83 [1994]; *Weil, Gotshal & Manges, LLP v Fashion Boutique of Short Hills, Inc.*, 10 AD3d 267 [1st Dept 2004]; CPLR 3026). "The motion must be denied if from the pleading's four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law" (*511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d at 152 [internal quotation marks omitted]; *see Leon v Martinez*, 84 NY2d at 87-88; *Guggenheimer v Ginzburg*, 43 NY2d 268 [1977]). Thus, "[w]hether [the nonmoving party] can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]; *see Taxi Tours, Inc. v Go New York Tours, Inc.*, 41 NY3d at 993; *Sassi v Mobile Life Support Servs., Inc.*, 37 NY3d 236, 239 [2021]).

**160502/2022 PLUMBERS LOCAL UNION NO. 1, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA ET AL vs. THE NEW YORK CITY DEPARTMENT OF BUILDINGS ET AL Motion No. 001**

**Page 4 of 12**

[* 4]

4 of 12

The facts as alleged by the petitioners here, however, failed to state a cause of action for relief either in the nature of prohibition or in the nature of mandamus to compel.

"The extraordinary remedy of prohibition is available only where a judicial or quasi-judicial body acts or threatens to act 'without or in excess of its jurisdiction and then only when the clear legal right to relief appears and, in the court's discretion, the remedy is warranted'" (*Matter of Allen B. v Sproat*, 23 NY3d 364, 375 [2014], quoting *Matter of Schumer v Holtzman*, 60 NY2d 46, 51 [1983]; *see* CPLR 7803[2]; *Matter of Holtzman v Goldman*, 71 NY2d 564, 569 [1988]; *Matter of Rush v Mordue*, 68 NY2d 348, 352 [1986]). "The writ is generally not available to correct common procedural or substantive errors, and will not lie where its proponent has access to another adequate legal remedy" (*Matter of Town of Huntington v New York State Div. of Human Rights*, 82 NY2d 783, 786 [1993] [citations omitted]). The petitioners have failed to establish a clear legal right to the relief that they have requested in this regard.

As relevant here, mandamus to compel lies where an administrative body has failed to perform a duty enjoined upon it by law, the performance of that duty is mandatory and ministerial rather than discretionary, and there is a legal right to the relief sought (*see* CPLR 7801[1]; *Matter of Hoffmann v New York State Ind. Redistricting Commn.*, 41 NY3d 341, 364-365 [2023]; *New York Civ. Liberties Union v State of New York*, 4 NY3d 175, 184 [2005]; *see also Klostermann v Cuomo*, 61 NY2d 525, 540 [1984] [explaining that the 'function of mandamus (is) to compel acts that officials are duty-bound to perform']).

> "Mandamus is generally not available to compel government officials to enforce laws and rules or regulatory schemes that plaintiffs claim are not being adequately pursued (*see e.g. Jones v Beame*, 45 NY2d 402, 409 [1978], citing *People ex rel. Clapp v Listman*, 40 Misc 372 [Sup Ct, Special Term, Onondaga County 1903] [mandamus does not lie to compel enforcement of Sunday 'blue' laws]; *Matter of Walsh v LaGuardia*, 269 NY 437 [1936] [no right to compel Mayor and Police Commissioner to prohibit operators of nonfranchised bus routes]; *Matter of Perazzo v Lindsay*, 30 AD2d 179 [1st Dept 1968], *affd* 23 NY2d 764 [1968] [no right to compel enforcement of laws governing operation hours of coffee houses]; *Matter of Morrison v Hynes*, 82 AD3d 772 [2d Dept 2011] [cannot compel the initiation of a prosecution]; *Matter of Bullion v Safir*, 249 AD2d 386 [2d Dept 1998] [no mandamus to compel police to make arrests]). This reflects

160502/2022  PLUMBERS LOCAL UNION NO. 1, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA ET AL vs. THE NEW YORK CITY DEPARTMENT OF BUILDINGS ET AL
Motion No. 001

Page 5 of 12

the long-standing public policy prohibiting the courts from instructing public officials on how to act under circumstances in which judgment and discretion are necessarily required in the fair administration of their duties"

(*Alliance to End Chickens as Kaporos v New York City Police Dept.*, 152 AD3d 113, 117-118 [1st Dept 2017] [city officials did not have mandatory duty to enforce statutes and Admin. Code provisions regulating the slaughter of poultry]; *Martin v La Rocca*, 2022 NY Slip Op 31510[U], *12, 15, 2022 NY Misc LEXIS 2434, *19-20, 26 [Sup Ct, N.Y. County, May 10, 2022], affd 224 AD3d 595 [1st Dept 2024] [New York State Division of Housing & Community Renewal did not have mandatory duty to enforce Rent Stabilization Code, and DOB did not have mandatory duty to require the amendment of a certificate of occupancy]; *see also Matter of Okslen Acupuncture, P.C. v Dinallo*, 77 AD3d 451, 451-452 [2d Dept 2010] [NYS Department of Insurance did not have mandatory duty to conduct periodic examinations of insurance companies that could be enforced by a writ of mandamus], citing *Klostermann v Cuomo*, 61 NY2d 525, 539 [1984]; *LMK Psychological Servs., P.C. v State Farm Mut. Auto. Ins. Co.*, 12 NY3d 217, 223 [2009]; *Sightseeing Tours of Am., Inc. v Air Pegasus Heliport, Inc.*, 40 AD3d 354 [1st Dept 2007]).

Even if the DOB had a mandatory duty to enforce the welder and gas work qualification provisions of the Administrative Code and the FGC (*see generally Housing & Devel. Admin. of City of N.Y. v Ruel Realty Co.*, 94 Misc 2d 43, 47-48 [Sup Ct. N.Y. County 1978] [NYC Department of Housing Preservation and Development has mandatory duty to enforce Admin. Code provision requiring adherence to minimum housing standards]), the petitioners themselves did not establish that they had a clear legal right to relief against the DOB. In *Matter of Perazzo v Lindsay* (30 AD2d 179, 179 [1st Dept 1968], *affd* 23 NY2d 764 [1968]), the petitioners sought to compel City officials to enforce provisions of the Penal Law and Administrative Code. In denying the petition, the Appellate Division, First Department, determined that enforcement decisions were executive prerogatives, and may only be judicially compelled "'when the facts show an uncontestable right to the performance of a ministerial act'" (*id.* at 180, quoting *Matter*

160502/2022  PLUMBERS LOCAL UNION NO. 1, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA ET AL vs. THE NEW YORK CITY DEPARTMENT OF BUILDINGS ET AL
Motion No. 001

Page 6 of 12

6 of 12

[* 6]

of *Ungar v Wagner*, 22 Misc 2d 403, 404 [Sup Ct, N.Y. County 1960]). Since agency enforcement generally is a discretionary act, and because there is no right even to compel the DOB to perform an investigation to assure compliance with Administrative Code and FGC requirements, the petitioners cannot compel the DOB to enforce provisions of those codes. Therefore, the petitioners failed to state a valid cause of action for relief in the nature of mandamus to compel enforcement.

While the petitioners may have stated a cause of action for mandamus to review certain DOB approvals for gas or welding work permits (*see* CPLR 7803[3]), they did not specifically identify the issuance of any particular permits that were the subject of their challenge, but only referenced instances in which they learned that uncertified gas workers or welders may have performed regulated work. Moreover, for the same reason that they failed to state a cause of action for relief in the nature of mandamus to compel, they failed to state a cause of action for a judgment declaring that the DOB must enforce rules and regulations that are binding upon it (*cf. Klostermann v Cuomo*, 61 NY2d at 541 [where mandamus to compel is an appropriate remedy, declaratory relief may also be appropriate to compel an agency to conform its future conduct to its mandatory statutory duties]).

The petitioners, however, lack standing to prosecute this proceeding and action.

As the Court of Appeals explained it in *Society of Plastics Indus. v County of Suffolk* (77 NY2d 761, 769 [1991]),

> "[w]hether a person seeking relief is a proper party to request an adjudication is an aspect of justiciability which, when challenged, must be considered at the outset of any litigation. Standing is a threshold determination, resting in part on policy considerations, that a person should be allowed access to the courts to adjudicate the merits of a particular dispute that satisfies the other justiciability criteria.

(*see also Matter of CPD NY Energy Corp. v Town of Poughkeepsie Planning Bd.*, 139 AD3d 942, 943 [2d Dept 2016]).

160502/2022 PLUMBERS LOCAL UNION NO. 1, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA ET AL vs. THE NEW YORK CITY DEPARTMENT OF BUILDINGS ET AL
Motion No. 001

Page 7 of 12

7 of 12

"That an issue may be one of 'vital public concern' does not entitle a party to standing. Courts surely do provide a forum for airing issues of vital public concern, but so do public hearings and publicly elected legislatures, both of which have functioned here. By contrast to those forums, a litigant must establish its standing in order to seek judicial review. Thus the first question we confront -- ultimately dispositive here -- is whether these plaintiffs are proper persons to challenge the administrative action of the Suffolk County Legislature under SEQRA. *The burden of establishing standing to raise that claim is on the party seeking review*"

(*Society of Plastics Indus. v County of Suffolk*, 77 NY2d at 769 [citations omitted] [emphasis added]). The court notes that, in *Saratoga County Chamber of Commerce v Pataki* (100 NY2d 801, 813, [2003], *cert denied* 540 US 1017 [2003]), the Court of Appeals held that where an individual plaintiff had standing to sue, it was unnecessary to address the question of whether the individual's organization also had standing. Several subsequent decisions in this State have reiterated this principle (see *Mulgrew v Board of Educ. of the City School Dist. of the City of N.Y.*, 75 AD3d 412, 414 n 2 [1st Dept 2010]; *New York State United Teachers v State of New York*, 140 AD3d 90, 95 [3d Dept 2016]). This court nonetheless concludes that neither of the petitioners met their burden of establishing that they had standing to challenge the DOB's alleged failure to enforce the gas and welding worker qualifications set forth in the Administrative Code or the FGC.

To challenge an administrative action, a petitioner must demonstrate direct harm that is different from the public at large and injures an interest that that the law was intended to protect (*see Society of Plastics Indus. v County of Suffolk*, 77 NY2d at 774; *see also Matter of Messina v Sobol*, 159 AD2d 916 [3d Dept 1990]).

In *Society of Plastics Industries*, a trade association challenged a county legislature's enactment of an ordinance because the legislature had not first conducted an environmental impact review, as required by state law. The Court of Appeals held that the trade association lacked standing because it failed to show that the economic injuries that allegedly would incurred by reason the legislature's failure to enforce the state law were within the law's zone of

**160502/2022 PLUMBERS LOCAL UNION NO. 1, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA ET AL vs. THE NEW YORK CITY DEPARTMENT OF BUILDINGS ET AL Motion No. 001**     **Page 8 of 12**

8 of 12

[* 8]

interests (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d at 778). Similarly, in *Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead* (69 NY2d 406, 406 [1987]), the Court of Appeals rejected a CPLR article 78 challenge by local commercial property owners who sought to enjoin the construction of a radio tower. There, the Court found that the petitioners lacked standing, as their "only substantiated objection was the threat of increased business competition, which is not an interest protected by the zoning laws" (*id.* at 415). In *Matter of Professional Ins. Agents of N.Y. State v New York State Ins. Dept.* (197 AD2d 258, 259 [3d Dept 1994]), a trade association representing insurance agents challenged an administrative interpretation of the Insurance Law that had been rendered by the New York State Insurance Department. The Appellate Division, Third Department, determined that the petitioner lacked standing, even though it claimed that such an interpretation would result in a potential "loss of revenue to their members" (*id.* at 260). The Third Department concluded that the alleged harms were "conjectural" and outside of the intended protections of the Insurance Law (*id.*; *see New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207, 214 [2004]).

Most germane to the instant dispute is the decision of the Appellate Division, Second Department in *Matter of Melrose Credit Union v City of New York* (161 AD3d 742, 747 [2d Dept 2018]). In that matter, several credit unions challenged the alleged failure of the New York City Taxi and Limousine Commission (TLC) to enforce a City regulation affording yellow-taxicab medallion owners the exclusive right to provide rides to persons hailing a taxicab on a public thoroughfare. One of the credit unions alleged that it had provided loans to medallion holders that permitted them to purchase their medallions, that it held a security interest on 1,432 medallions, and that, due to the nature of its lending business, most of the medallion owners were "members" of the credit union. The Second Department first explained that,

> "[t]he petitioner must . . . demonstrate that '"the injury asserted falls within the zone of interests or concerns sought to be promoted or protected by the statutory provision under which the agency has acted"' (*Matter of Radow v Board of Appeals of Town of Hempstead*, 120 AD3d 502, 502 [2d Dept 2014], quoting

160502/2022 PLUMBERS LOCAL UNION NO. 1, UNITED ASSOCIATION OF JOURNEYMEN AND         Page 9 of 12
APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND
CANADA ET AL vs. THE NEW YORK CITY DEPARTMENT OF BUILDINGS ET AL
Motion No. 001

9 of 12

*Matter of Riverhead PGC, LLC v Town of Riverhead*, 73 AD3d 931, 933 [2d Dep 2010]). '[T]he requirement that a petitioner's injury fall within the concerns the Legislature sought to advance or protect by the statute assures that groups whose interests are only marginally related to, or even inconsistent with, the purposes of the statute cannot use the courts to further their own purposes at the expense of the statutory purposes' (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d at 774)"

(*Matter of Melrose Credit Union v City of New York*, 161 AD3d at 745). In applying that rule of law, the Second Department concluded that,

"[a]lthough it is clear that [the credit union] would suffer an injury different from that of the public at large, it failed to adequately allege that it would suffer direct harm as a result of the TLC's purported failure to enforce taxicab medallion owners' exclusive right to hails. [The credit union's] alleged injury—the 'deteriorating financial condition of [its] medallion loan portfolio'—is an indirect consequence of the injuries that it alleged were suffered by medallion owners (*see City of New York v Smokes-Spirits.Com, Inc.*, 12 NY3d 616 [2009]; *cf. North State Autobahn, Inc. v Progressive Ins. Group Co.*, 102 AD3d 5, 17 [2d Dept 2012]).

(*id*. at 746). Moreover, regardless of whether a medallion owner itself had challenged the TLC's purported failure to enforce the rule, the Court determined, in effect, that the interests of neither the credit union nor an individual medallion owner fell within the zone of interests sought to be protected by the street-hailing rule. In this regard, the Court quoted from the applicable rule, 35 RCNY 52-01, which provided that,

"[t]o promote public comfort and convenience, and taking into account the overall public transportation network of the City, the [TLC] will establish an overall public transportation policy governing for-hire transportation services in the City, including taxi, limousine, paratransit and commuter van services,"

and that the rule had been promulgated to "establish regulations for E-Hail and E-Payment that will encourage innovation, provide desired services to taxi passengers, promote safety and consumer protection, and *create income opportunities for drivers*" (emphasis added), but not necessarily medallion owners, who rarely were themselves drivers.

Here, the petitioners do not have standing because their alleged injuries are economic, conjectural, and not distinct from injuries suffered by the public at large. Moreover, the interests sought to be protected by the Administrative Code and FGC worker qualification, experience,

160502/2022 PLUMBERS LOCAL UNION NO. 1, UNITED ASSOCIATION OF JOURNEYMEN AND
APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND
CANADA ET AL vs. THE NEW YORK CITY DEPARTMENT OF BUILDINGS ET AL
Motion No. 001

Page 10 of 12

10 of 12

and certification requirements were not meant to include the economic interests of qualified gas workers and welders, whether members of a union or not. Rather, those requirements were meant to protect the integrity of buildings, gas and plumbing infrastructure connected to buildings, and the public safety. New York City's various construction codes, including the FGC, offer "reasonable minimum requirements and standards . . . in the interest of public safety, health, welfare and the environment" (Admin Code § 28-101.2) and "minimum standards to safeguard life or limb, health, property, public welfare and the environment" (FGC § 101.4).

The petitioners alleged in the petition/complaint that the union's members have been deprived of "job opportunities, income and benefit fund contributions" due to the DOB's alleged failure to enforce qualification requirements. Like the trade association in *Society of Plastics Industries*, the property owners in *Sun-Brite Car Wash*, the insurance agents in *Professional Insurance Agents of N.Y. State,* and the credit union in *Melrose*, the injuries that the petitioners in this matter claim to have suffered are primarily economic harms that are outside of the zone of interests protected by the relevant ordinance and rule (*see, e.g., Matter of Professional Ins. Agents of N.Y. State v New York State Ins. Dept.*, 197 AD2d at 261 [the "purpose of insurance law . . . is to protect contractors (i.e., insureds and insurers), not the economic interests of insurance agents."]).

Even were the claims of potential economic loss cognizable and sufficient to establish standing, the proof submitted by the petitioners is slight. Although the court permitted the petitioners to submit supplemental papers in opposition to the respondents' cross motion, at most, they have shown that unqualified or uncertified gas workers or welders were permitted to perform work at a handful of job sites, or that work at some of those sites was substandard. This evidence is not proof of a systemic failure of the DOB carefully to review permit applications, or of the qualifications of persons anticipated to perform tasks on permitted gas and welding work.

**160502/2022 PLUMBERS LOCAL UNION NO. 1, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA ET AL vs. THE NEW YORK CITY DEPARTMENT OF BUILDINGS ET AL Motion No. 001**

**Page 11 of 12**

11 of 12

[* 11]

The court rejects the petitioners' contention that they have standing to challenge the DOB's failure to enforce the relevant rules because the alleged failure placed union members at high risk of injury or death. These alleged harms are speculative and conjectural, given that, as the respondents correctly noted, the union members "would not be working at the sites where gas work is being completed by allegedly unqualified individuals." Even if the union's members would suffer societal risks from lesser quality work performed by unqualified individuals, such harms are not "in some way different from that suffered by the public at large, within the zone of interests of" the relevant ordinances (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d at 762).

Accordingly, it is,

ORDERED and ADJUDGED that the respondents/defendants' cross motion is granted, the petition/complaint is dismissed, and the proceeding/action is dismissed.

This constitutes the Decision, Order, and Judgment of the court.

__8/12/2024__
**DATE**

JOHN J. KELLEY, J.S.C.

| MOTION: | X | CASE DISPOSED | | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |
| CROSS MOTION: | X | CASE DISPOSED | | | | NON-FINAL DISPOSITION | | |
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**160502/2022 PLUMBERS LOCAL UNION NO. 1, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA ET AL vs. THE NEW YORK CITY DEPARTMENT OF BUILDINGS ET AL Motion No. 001**

**Page 12 of 12**

12 of 12

[* 12]